## AMERICAN INS. CO. OF TEXAS v. BROWN.

No. 33829.    Sept. 26, 1950.

*222 P. 2d 757.*

Hughes & Hughes, of Hobart, and Percy C. Fewell, of Dallas, Tex., for plaintiff in error.

Carder & Carder, of Hobart, for defendant in error.

LUTTRELL, J. This is an action on an accident and health insurance policy brought by plaintiff, Hal Brown, against defendant, American Insurance Company of Texas, to recover for total disability resulting from disease. At the close of plaintiff's evidence defendant demurred thereto, and when its demurrer was overruled by the trial court stood upon its demurrer and refused to offer any proof. Thereupon the court submitted the case to the jury which returned a verdict in favor of plaintiff, and the court rendered judgment on the verdict. Defendant appeals.

The specific provision of the policy which was the basis of plaintiff's cause of action reads as follows:

"The Company will pay at the rate of $100.00 per month for loss of time occurring within the effective term of this policy from disability resulting from disease, the cause of which disease originates more than thirty days after the date of this policy, not to exceed the Principal Sum of this policy in the aggregate, provided said disease necessitates a total disability and total loss of time."

Defendant contends first that the verdict of the jury was not sustained by sufficient evidence and was contrary to law; and second, that plaintiff failed to prove that his alleged disability was within the coverage of the policy sued upon, and that the trial court erred in refusing to sustain its demurrer to the evidence. Since both contentions involve the sufficiency of the evidence, they will be considered together.

Plaintiff testified that the policy was taken out on October 10, 1945, at which time he was working for the Hobart Flour & Feed Company, in the retail

department, and that he had been working in the same place at the same occupation for some sixteen or seventeen years prior to the date of the policy; that on July 1, 1946, after a strenuous period of work, he felt "tough" and quit in order to obtain a rest; that he did not improve but grew weaker and lost weight, and on about January 1, 1947, for the first time consulted a physician, who began treating him, and that from that time on he had been under the physician's care and had been wholly disabled, and unable to pursue any gainful occupation. He testified that he did not know whether he had a disease or not. It appears that on March 11, 1947, following his examination by the physician, he notified the company that he had been sick for the last month and asked them to send him a claim blank, which the company did, and he filled out this blank and returned it to the company.

The physician testified that when plaintiff first came to his office he gave him a complete examination, but did not find anything organically wrong, and did not at that time diagnose the cause of his condition, but that he was weak, his blood pressure was low, he had a ringing in his ears and dizziness, and was unable to work. He testified that according to his diagnosis plaintiff was suffering from anorexia nervosa, a nervous condition causing a loss of appetite, and that since the date of the examination, in his opinion, plaintiff had been unable to work. He testified that this was a functional disease as distinguished from an organic disease, and that he was unable to state the exact cause of the condition. The policy states that it covers "every disease". Although the policy provided that the company had the right to have the insured examined as often as it might reasonably require during the pendency of any disability claimed, it did not have plaintiff examined and did not produce any evidence to contradict the testimony of the plaintiff and his physician.

Plaintiff's petition alleged that he was incapacitated from and after the 1st day of July, 1946, and defendant contends that the notice sent on March 11, 1947, did not comply with the terms of the policy, which provided that within ninety-one days after the commencement of the disability the insured must notify the company of the disability claimed. But from the evidence it appears that at the time plaintiff was not aware that his condition was the result of a disease of any kind, but assumed that it was due to his need of rest, and that he did not learn until January 1, 1947, or thereafter, that his condition was due to the functional disease testified to by his physician. The notice was given to the company within ninety-one days from the date he was so advised, and we think this was sufficient compliance with the terms of the policy. Plaintiff was not required upon every indisposition on his part to immediately submit to an examination by a physician to ascertain whether such indisposition might be due to disease, but was entitled to wait a reasonable time before so doing.

Defendant also contends that plaintiff failed to bring his alleged disability within the coverage of the policy in that his evidence did not show that the functional disease from which his physician testified he was suffering originated more than thirty days after the date of the policy sued upon. We are unable to agree with this contention. While the physician testified that he could not determine the exact cause of the disease, the evidence shows that plaintiff did not suffer any ill effects from the disease until nearly a year after the policy was taken out.

In 45 C. J. S. 971, §893, it is stated that clauses like the one above quoted are strictly construed against the insurance company, and that illness or disability will be deemed to have its inception when the disease first becomes manifest or active. And in Mutual Benefit Health and Accident Ass'n v. Ramage, 293 Ky. 586, 169 S. W. 2d

624, it is stated that the disease originates when it becomes active or there exists a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease. In the instant case neither the physician nor the plaintiff could testify with certainty the exact time when this disorder may first have begun to manifest itself, but we think that it could not be said to have originated prior to the expiration of thirty days from the date of the policy when it did not manifest itself or become active until nearly a year thereafter.

To construe the policy as contended for by defendant would in many instances make it impossible for the insured to recover for the loss of health due to disease originating after the policy was taken out, since the exact date of origin would often be incapable of definite ascertainment.

We agree with the contention of defendant that under the authorities, such as Imperial Fire Ins. Co. v. County of Coos, 151 U.S. 452, 38 L. Ed. 231, and other authorities so holding, it is incumbent upon the insured to bring himself within the conditions of the policy in order to recover thereon, but we are unable to agree that this requires him to fix with absolute certainty the exact date of the inception of the disease.

In National Life & Accident Ins. Co. v. Shermer, 161 Okla. 77, 17 P. 2d 401, we said:

"The phrase 'good health' as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he had no latent disease of which he is wholly unconscious. If by the phrase 'good health' an insurance company desires to exclude every disease, though latent and unknown, it must do so by distinct and unmistakable language."

Applying that rule to the instant case, we hold that the evidence sufficiently supports the verdict of the jury, and that plaintiff sufficiently showed that his alleged disability was within the coverage of the policy.

Defendant also contends that the policy lapsed because of failure to pay premiums thereon after the disability occurred. But the policy expressly provides that it may not be canceled during any period of disability for which the company is liable. If the premiums were payable during the period of disability, which we do not herein determine, they could have been withheld by the company from the disability payments due, and the verdict of the jury so withheld it.

From its third and last contention defendants asserts that the trial court erred in giving instruction No. 6 to the jury. Instruction No. 6 advised the jury that if they found plaintiff was totally disabled on or before July 10, 1947, then the verdict should be for the plaintiff for the period of his total disability at the rate of $100 per month, not exceeding twelve and one-half months, or $1,250, which was the principal sum of the policy.

In view of what we have said above in disposing of other contentions made by defendant, we find no error in the giving of this instruction.

Affirmed.

ARNOLD, V. C. J., and CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur.