ALMA E. CUDWORTH, Administratrix of JOHN M. CUDWORTH Estate,
v. RESERVE LIFE INSURANCE CO.

(Filed 29 February, 1956.)

**1. Appeal and Error § 28—**

The brief must refer to the printed pages of the transcript where the exception and assignment of error appear which present the question discussed, Rule of Practice in the Supreme Court No. 28, and failure to comply with this rule results in a failure to present the question for review, since exceptions in the record not set out in appellant's brief will be taken as abandoned.

**2. Appeal and Error § 6c (1)—**

The rules governing appeals are mandatory and not directory, and will be enforced uniformly.

**3. Appeal and Error § 39e—**

Where an exhibit excluded from evidence does not appear of record, its exclusion will not be held for error, since it cannot be determined that its exclusion was prejudicial.

**4. Appeal and Error § 38—**

The burden is on appellant to show error amounting to the denial of some substantial right.

**5. Insurance § 39—Evidence held for jury on question of whether illness had its inception more than fifteen days after issuance of policy.**

The policy in suit provided that insurer would be liable for hospital expenses for sickness originating while the policy was in force and more than fifteen days after its date of issue. This action was instituted to recover for hospital expenses incurred when insured entered a hospital almost a year and a half after the issuance of the policy, and died of lung cancer. There was medical expert testimony that development of insured's type of cancer was slow, but that its rate of development varied, and there was expert opinion testimony that insured had cancer at the time the policy was issued and expert opinion testimony by the doctor who operated on insured's lung and made the diagnosis, that as far as the witness knew, insured did not have symptoms of cancer before the date the policy was issued. *Held:* There is some evidence from which the jury could find that insured's cancer did not originate until more than fifteen days after the date the policy was issued, and the conflicting testimony was for the jury to resolve and not the court.

**6. Trial § 23a—**

While the affirmative testimony of a credible witness is ordinarily more reliable than the negative testimony of an equally credible witness, nevertheless such negative testimony is evidence to be considered by the jury.

BARNHILL, C. J., dissents.

BOBBITT, J., concurs in result.

APPEAL by defendant from *Morris, J.,* September Civil Term 1955 of PASQUOTANK.

Civil action by the administratrix of John M. Cudworth, deceased, to recover hospital and surgical expenses incurred by him at the General Hospital, Norfolk, Va., between 31 March 1952 and 11 April 1952, and between 15 April 1952 and 13 May 1952, from the defendant upon Hospital and Surgical Expense Policy No. R-908861 issued by it to him on 21 September 1951, and in force at the time of his death on 13 May 1952.

From a judgment entered upon a verdict rendered in favor of the plaintiff, the defendant appeals, assigning error.

*John H. Hall for Plaintiff, Appellee.*
*LeRoy & Goodwin for Defendant, Appellant.*

PARKER, J.   The defendant in its brief states that two questions are presented.   One, did the court err in refusing to admit the hospital record of John M. Cudworth in the Albemarle Hospital?   Two, did the court err in refusing the defendant's motion for judgment of nonsuit? On these two questions the defendant's brief has no reference anywhere to any exception or any assignment of error.   The sole reference in its brief to any exception or assignment of error occurs on p. 17, where in discussing the failure of the court to grant its motion for judgment of nonsuit, it says the court permitted "Dr. Hotchkiss, over the objection of defendant, to testify that 'as far as I know he (plaintiff's decedent) didn't have symptoms of cancer before September 21, 1951,' as stated on page 14 of the record, said statement being made over timely objection and exception by defendant as shown on page 13 of the record, this being defendant's Exception No. 3."

The appellant's brief as to the two questions discussed in its brief does not conform with Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 544, 562-3 (these Rules are set forth in Vol. 4A, G.S. Appendix 1, pp. 157-200), which reads in part as follows: "Such brief shall contain, properly numbered, the several grounds of exception and assignment of error with reference to printed pages of transcript, and the authorities relied on classified under each assignment . . . Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." *Shepard v. Oil & Fuel Co.,* 242 N.C. 762, 89 S.E. 2d 464; *Ammons v. Layton,* 242 N.C. 122, 86 S.E. 2d 915; *S. v. Stantliff,* 240 N.C. 332, 82 S.E. 2d 84; *S. v. Newton,* 207 N.C. 323, 177 S.E. 184; *Bradshaw v. Stansberry,* 164 N.C. 356, 79 S.E. 302.

"We have held in a number of cases that the Rules of this Court, governing appeals, are mandatory and not directory . . . The Court

has not only found it necessary to adopt them, but equally necessary to enforce them and to enforce them uniformly." *S. v. Moore,* 210 N.C. 459, 187 S.E. 586.

The General Assembly, Ch. 129, Session Laws 1955, increased the judicial districts of the Superior Court from 21 to 30. It may not be amiss to quote what this Court said in 1913 in *Bradshaw v. Stansberry, supra:* "The number of appeals has been increasing year by year under conditions heretofore existing, and with the additional facilities for trials in the Superior Courts, brought about by four new judicial districts, we may reasonably expect a further increase of from 15 to 20 per cent. It is, therefore, necessary to have rules of procedure and to adhere to them, and if we relax them in favor of one, we might as well abolish them."

Though the appellant's brief fails to comply with the Rules of Practice of this Court we have examined the record, as was done in *Shepard v. Oil & Fuel Co., supra,* and have found no valid reason for disturbing the judgment of the lower court.

The hospital record of John M. Cudworth in the Albemarle Hospital is not a part of the record and case on appeal. The record and case on appeal merely show that the court permitted the defendant to have it identified and marked, and to have photostatic copies of it made, so that the original might go back to the hospital. The case on appeal was agreed upon by counsel. As this hospital record is not a part of the record and case on appeal, there is nothing to show that the defendant was prejudiced by the refusal of the court to admit it in evidence. *Hege v. Sellers,* 241 N.C. 240, 84 S.E. 2d 892; *S. v. Poolos,* 241 N.C. 382, 85 S.E. 2d 342; *Coach Co. v. Motor Lines,* 229 N.C. 650, 50 S.E. 2d 909.

The headnote in *Fleming v. McPhail,* 121 N.C. 183, 28 S.E. 258, in our Reports, states: "Where an appellant fails to have printed as a part of the record on appeal an exhibit which was made, by the judge or by agreement of counsel, a part of the case on appeal, the appeal will be dismissed." See also: *Hicks v. Royal,* 122 N.C. 405, 29 S.E. 413. As to maps which are a part of the transcript on appeal see: Rule 19 (7), Rules of Practice in the Supreme Court, 221 N.C. 544, 556, and *Stephens v. McDonald,* 132 N.C. 135, 43 S.E. 592.

The defendant has not successfully carried the burden of showing prejudicial error amounting to the denial of some substantial right in the refusal of the court to admit this hospital record in evidence. *Johnson v. Heath,* 240 N.C. 255, 81 S.E. 2d 657.

The Hospital and Surgical Expense Policy here was issued by defendant to plaintiff's intestate on 21 September 1951, and was in force from then until his death on 13 May 1952. The record contains only a part

of the policy. The part introduced in evidence states that the company insures the applicant, and will pay, subject to all provisions and limitations herein contained, the benefits provided while this policy is in force "resulting from sickness the cause of which originates while this policy is in force and more than fifteen days after the date hereof."

Part II of the policy is headed Limitations and Exclusions, and Section two thereof reads: "Tuberculosis, cancer . . . shall be covered under this policy only if hospital confinement begins after this policy has been in force for six months or more." This policy had been in force six months and ten days before John M. Cudworth entered the General Hospital, Norfolk, Virginia, on 31 March 1952, as defendant states in its brief.

On 13 May 1952 John M. Cudworth died in the General Hospital at Norfolk from a lung cancer. The defendant contends that its motion for judgment of nonsuit should have been granted for the reason that all the evidence shows that John M. Cudworth was suffering from lung cancer at the time the policy was issued, with the exception of this testimony of plaintiff's witness, Dr. W. S. Hotchkiss, "as far as I know, he didn't have symptoms of cancer before September 21, 1951," which the defendant characterizes as "purely negative" testimony.

Dr. W. S. Hotchkiss practices in Norfolk, Virginia, and was found by the court to be "a medical expert, both as a general practitioner and as a surgeon specializing in chest surgery." His testimony tended to show these facts: John M. Cudworth entered the General Hospital in Norfolk on 31 March 1952. He first saw Cudworth there on 31 March 1952 or 9 April 1952; he gave both dates. A specimen washed out of Cudworth's lung showed T.B. germs. From a study of Cudworth's case he thought he had tuberculosis, with a possibility of cancer. When part of Cudworth's right lung was removed surgically on or about 17 April 1952, the specific diagnosis was squamous cell cancer of the lung, which caused his death on 13 May 1952. In his opinion, after surgery, there was no tuberculosis. He could not tell the date when this lung cancer originated, because cancers of the lung can, and do, vary a great deal in their rate of growth. He testified, "as far as I know, he didn't have symptoms of cancer before September 21, 1951." He also testified on cross-examination, "it is possible he had it prior to September 1951, and it is also possible he did not." He was called into the case by Dr. Alfred Kruger of Norfolk.

Dr. Alfred Kruger, a witness for the defendant, was found by the court to be "a specialist in internal medicine, and is qualified as an expert in diseases of the chest." His testimony tended to show these facts: He first saw Cudworth in the Norfolk General Hospital around 1 April 1952. Cudworth told him that three or four years before he had

developed a cough and a feeling of fatigue.  His cough had continued since that date, and had increased in severity.  He was losing weight, six months before had expectorated blood, and had shortness of breath. Cudworth showed him an X-ray taken in 1949.  This X-ray showed some disease within the right upper lobe of the lung.  A 1951 X-ray showed some increase in the disease.  X-rays taken in the General Hospital, after his admittance, showed additional increase in this disease.  From the history obtained from Cudworth, from an examination of the 1949, 1951 and 1952 X-rays, from a study of the part of the lung removed by surgery and the report received from the pathologist, who examined the removed part of the lung, it was his opinion that Cudworth's lung cancer existed prior to September 1951, and it was also his opinion, based on a reasonable degree of medical certainty, that Cudworth had lung cancer in 1949.  On cross-examination Dr. Kruger testified that he noted on Cudworth's chart in the hospital "that I thought that the disease in his lungs was tuberculosis," and that the final diagnosis of cancer was at the time of surgery.  He also said on cross-examination that from 15 April 1952 to 13 May 1952 Cudworth was primarily Dr. Hotchkiss' patient, and that cancer was definitely suspected before surgery, and that squamous cell cancer is a slow type. Cudworth did not have tuberculosis.

Between the dates of 31 March 1952 and 13 May 1952 the insured incurred hospital, surgical and related expenses of the kind and nature included within the policy here at the Norfolk General Hospital, in excess of the jury's verdict.

Doctors Hotchkiss and Kruger were the only persons who testified as to Cudworth's cancerous condition.  Dr. Hotchkiss, the operating surgeon testified, "as far as I know, he (Cudworth) didn't have symptoms of cancer before September 21, 1952."  He must have based this expert opinion on facts, which his study and examination of, and operation on, the patient disclosed, and it cannot be said that this testimony is without probative value.  If Cudworth had no symptoms of lung cancer when the policy was issued, it would seem a permissible inference that the cancer did not originate within 15 days thereafter, in the light of the evidence that lung cancers vary a great deal in their rate of growth, and that these two experts did not definitely diagnose cancer until after surgery on 17 April 1952.  Both doctors agreed that Cudworth did not have tuberculosis.  Dr. Kruger testified that Cudworth had lung cancer when the policy was issued.  For us to hold, as the defendant contends, that all the evidence shows that Cudworth's lung cancer existed when the policy was issued, would be to assert that we knew more about the inception of this lung cancer than the chest surgeon who studied the patient, and did the surgery.  The evidence,

and the reasonable inferences to be drawn therefrom, are in conflict as to whether Cudworth's lung cancer did, or did not, originate while the policy was in force and more than fifteen days after the date of its issue, and we cannot usurp the province of the jury to resolve this conflict. See: *American Ins. Co. of Texas v. Brown*, 203 Okl. 407, 222 P. 2d 757; *Jacques v. Farmers Lumber & Supply Co.*, (Iowa) 47 N.W. 2d 236, 240; *Mutual Ben. Health & Accident Ass'n. v. Ramage*, 293 Ky. 586, 169 S.W. 2d 624; *Cohen v. North American Life & Casualty Co.*, 150 Minn. 507, 185 N.W. 939; *American Casualty & Life Co. v. Butler*, (Court of Civil Appeals Texas), 215 S.W. 2d 392; *Reserve Life Ins. Co. v. Kelly*, (Court of Civil Appeals Texas), 266 S.W. 2d 395; *Reserve Life Ins. Co. v. Everett*, (Court of Civil Appeals Texas), 275 S.W. 2d 713 (policy by defendant here with policy providing that the sickness must originate more than 15 days after the date of the policy); 45 C.J.S., Insurance, p. 972; Appleman on Insurance Law and Practice, Sec. 406. *McGregor v. Assurance Corp.*, 214 N.C. 201, 199 S.E. 641, is distinguishable.

We said in *Johnson & Sons, Inc. v. R. R.* and *Johnson v. R. R.*, 214 N.C. 484, 486, 199 S.E. 704: "While the affirmative testimony of a credible witness is ordinarily more reliable than the negative testimony of an equally credible witness, still testimony that a person near by who could have heard and did not hear the sounding of a whistle or the ringing of a bell is some evidence that no such signal was given." This principle of law is applicable to the affirmative testimony of Dr. Kruger and to the negative testimony of Dr. Hotchkiss here.

The charge of the court has not been brought forward. The record states the charge is considered by the defendant to have been fair to both sides, and free from material error.

In the trial below we find

No error.

BARNHILL, C. J., dissents.

BOBBITT, J., concurs in result.