**C. I. T. FINANCIAL SERVICES, INC.,**
Appellee,

v.

**Opal Eunice McDERMITT, Appellant,**
and

**Connecticut General Life Insurance Company, a corporation, Appellee.**

**No. 47954.**

Court of Appeals of Oklahoma,
Division No. 1.

Dec. 9, 1975.

Released for Publication by Order of Court
of Appeals Dec. 31, 1975.

John P. Scott and Robert W. Raynolds, Tulsa, for appellant.

Boesche, McDermott & Eskridge by Glenn R. Davis, Tulsa, for appellee Connecticut General Life Ins. Co.

REYNOLDS, Judge:

This appeal involves a cross-petition against credit accident and sickness insuror to obtain payment of a note pursuant to policy provisions.

On July 28, 1971, appellant, Opal McDermitt, defendant and cross-petitioner below, borrowed $1,669.15 from C.I.T. Financial Services, Inc. on a precomputed note. The payments were $64.00 per month for 36 months. The amount financed included a premium in the amount of $87.55 for a credit accident and sickness policy issued by Connecticut General Life Insurance Company, the appellee. This policy pro-vided that monthly benefits of $64.00 per month would be paid to C.I.T. in the event the insured became totally disabled. It also provided that the unearned portion of the premium would be refunded. See 14A O.S.1971, § 4–108.

Ms. McDermitt defaulted on December 31, 1972, whereupon C.I.T. filed an action to recover $1,441.53, the balance due. In her answer and cross-petition against the insurance company the appellant alleged that she had become disabled; that she had made demand upon the insuror for payment of the debt but that it had failed and neglected to pay the benefits to C.I.T. as provided in the policy. The insuror answered, denying liability on the ground that the insured either was not disabled or that her disability existed at the time the policy was issued and that she failed to reveal the disability therefore is estopped from asserting a valid claim.

C.I.T. and the insurance company were each granted summary judgment, pursuant to 12 O.S.1971 Ch. 2, App. Rule 13, on pleadings, exhibits and a deposition of Ms. McDermitt's physician. Apparently other documents were considered but they are not a part of the record; therefore may not be considered by this court. *Board of County Commissioners of Choctaw County v. Schuessler*, 358 P.2d 830 (Okl.1961). Appellant perfected an appeal from the judgment in favor of the insurance company after the trial court overruled her motion for new trial.

According to testimony in her physician's deposition, Ms. McDermitt's disability resulted from degenerative disc disease of the cervical, thoracic and lumbar areas of the spine and severe osteoarthritis of both knees. The doctor stated that these conditions caused her to be " . . . definitely disabled . . . she was a cripple."

Although there is no direct evidence as to how Ms. McDermitt made her living, it appears that she was engaged in collecting rents on a number of pieces of real estate. It also appears that she made repairs on

these properties herself. Her physician stated that she would not be able to perform repair work on the real estate but that she would be able to collect rent. The doctor further testified that her disability did not happen all at once; that in his opinion it took three to five years.

In order to recover on an insurance policy the insured must meet the conditions of the policy. *Imperial Fire Ins. Co. v. County of Coos,* 151 U.S. 452, 14 S. Ct. 379, 38 L.Ed. 231; *American Insurance Co. of Texas v. Brown,* 203 Okl. 407, 222 P.2d 757 (1950). However, policy provisions precluding recovery for pre-existing disabilities are strictly construed against the insuror. *Reserve Life Insurance Co. v. Lyle,* 288 P.2d 717 (Okl.1955); *American Insurance Co. of Texas v. Brown,* supra; 45 C.J.S. Insurance § 893.

The provision in the insurance contract that limits coverage of pre-existing injuries or sickness is as follows:

"LIMITATIONS.

"1. The accident and sickness policy does not cover and no payment will be made thereunder for any period of disability or portion thereof.

(a) . . .

(b) . . .

(c) caused by a pre-existing injury or sickness for which medical advice or consultation or treatment was required, or recommended by a legally qualified physician within six months prior to the Effective Date and which caused loss within the six months following the Effective Date; provided, however, that disability commencing thereafter from such injury or sickness shall be covered.:

The plain language of the limitation pertains only to disabilities caused by pre-existing sickness for which medical treatment, advice or consultation was required or recommended by a physician during the six month period immediately prior to the effective date of the policy. Therefore, if a physician did not require or recommend treatment, advice or consultation during this period, her preexisting condition is covered under the terms of the policy. There is nothing in the record that indicates that she saw a physician for any reason during this period.

Failure to reveal the degenerative conditions at the time the appellant bought the policy does not, in and of itself, estop her from asserting a valid claim. Nothing in the record or the insurance contract indicates that the insuror required the insured to reveal preexisting conditions. The limitation in the contract is drafted to include coverage of these conditions so long as medical treatment had not been needed for six months prior to the date of the contract. Apparently this was done to avoid the necessity of making inquiries into the health of the insured. It was error for the trial court to have granted a motion for summary judgment on the ground that appellant did not sustain an illness or injury while the insurance policy was in effect.

Appellee asserts that the testimony of Ms. McDermitt's physician proved that the appellant was not totally disabled because she could still collect rent. Appellee further stated that appellant totally failed to carry the burden of proof on this issue as required by 12 O.S.1971, § 577. This statute does not speak to burden of proof. It merely outlines the order in which the parties put on their evidence at trial.

The contract provision in the policy that defines totally disabled states:

"The terms 'Totally Disabled' and 'Total Disability' shall mean a disability caused by Injury or Sickness as a result of which . . . [insured] is completely unable to engage in any occupation or employment for wage or profit; . . ."

A similar provision was considered in *Continental Casualty Co. v. York,* 402 P.2d 878 (Okl.1965). In that case the court defined "total disability:"

"This court, as heretofore set out, does not place a literal construction on the in-

terpretation of 'total disability' and has consistently followed the rule that appears in an annotation . . . at page 1048 of 51 A.L.R. wherein it is stated:

> " 'Most of the courts * * * adhere to the rule that "total disability" contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness; but the total disability contemplated means inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner.' "

The court went on to say:

> "In *Metropolitan Life Ins. Co. v. Fisher* [382 P.2d 434 (Okl.1962)], supra, we stated that the question of whether an insured is totally and permanently disabled within the meaning of the policy is ordinarily a question to be determined by a properly instructed jury."

The physician's testimony is enlightening on the question of the type of activities the appellant may engage in. It tells us little of the effect the restrictions on her activities had on her ability to be employed for wage or profit. There is no evidence as to how much of her income was received from the rent or how much saved by her own efforts. Therefore, a material question of fact for the jury is: was the appellant so disabled that she was unable to do substantially all of the material acts necessary to the prosecution of her business in substantially her customary and usual manner?

The Supreme Court, in *Flick v. Crouch,* 434 P.2d 256 (Okl.1967) considered the function of a summary judgment. It stated:

> "* * * a trial is not only useful but absolutely necessary where there is a genuine issue as to any material fact. On motion for summary judgment there can be no trial of fact issues since its function is to determine whether there are any genuine issues as to material facts. Such motion should therefore be denied if under the evidence reasonable men might reach different conclusions from undisputed facts."

The material questions of fact remain at issue. The judgment of the trial court in favor of Connecticut General Life Ins. Co. is reversed and remanded for trial on the merits.

Reversed and remanded.

ROMANG, P. J., and BOX, J., concur.