STATE OF NORTH CAROLINA v. ZEBEDEE MILBY, STATE OF NORTH
CAROLINA v. CHARLES LINWOOD BOYD

No. 134

(Filed 27 January 1981)

**Criminal Law § 42.4; Robbery § 3.2— armed robbery — guns taken from
defendants five weeks later — connection with crime**

In a prosecution for armed robbery, the Court of Appeals erred in determin-
ing that the admission of handguns taken from defendants five weeks after the
crime with which they were charged was prejudicial error, since the Court of
Appeals held that there was no evidence to connect guns to the robbery for which
defendants were being tried, but (1) on the basis of the record before the Court, it
was unable to conclude that the admission of the exhibits by the trial court was in
fact error, as the exhibits in question were not placed before the Court for its
examination, nor was there any stipulation placed in the record which would
serve to describe the exhibits; and (2) even if the exhibits were erroneously
admitted, defendants were not prejudiced by their admission into evidence, as
several witnesses positively identified defendants as the persons who perpetrated
the robbery.

Justice MEYER did not participate in the consideration or decision of this case.

ON discretionary review of the decision of the North Carolina
Court of Appeals reported at 47 N.C. App. 669, 267 S.E.2d 594
(1980), reversing the judgment of *Tillery, J.*, entered at the 8
October 1979 Criminal Session of VANCE Superior Court.

Upon pleas of not guilty defendants were tried on bills of indict-
ment proper in form which charged them with the crime of armed
robbery.

At trial, the evidence for the state tended to show that:

On 21 April 1979, the A & P Food Store on North Garnett
Street in Henderson, North Carolina, was robbed by two men. At
approximately 9:35 p.m. on that day, Ms. Juanita Fuller, an
employee of the store, was working in the store's office. The office
was located at the front of the store on the left-hand side. From her
position in the office, Ms. Fuller had a view of the various checkout
lanes at the front of the store. At the time in question, registers two
and three were in operation. As Ms. Fuller opened the office safe to
deposit some of the day's receipts, she heard the office door slam.
She turned around and saw defendant Charles Boyd entering the
office. Defendant Boyd was carrying a yellow bucket in his right
hand and a pistol in his left hand. At the time she first saw him,

Boyd was approximately four feet away from her. After he entered the office, Boyd went to the opened safe and began filling the bucket with money.

As Boyd went about the task of emptying the safe, defendant Zebedee Milby was standing near the second cash register and was pointing a gun at Mark Lassiter, co-manager of the store, and Dick Twisdale, an employee of the store who was operating the particular register. Milby had ordered Lassiter and Twisdale to lie upon the floor.

After a short period of time, Boyd completed filling the bucket with money. He then ordered Ms. Fuller to bring him a brown paper grocery bag. She complied with the order, and Boyd continued to empty the safe. After depleting the safe, Boyd picked up the bucket and the bag and proceeded to leave the office. As he did, however, the brown bag began to tear apart, and two smaller bags inside fell out onto the floor. Boyd called out to his companion for help. Milby moved to the office where Ms. Fuller handed him the two bags which had fallen out as he pointed a pistol at her. The two defendants then made their get away, carrying with them approximately $5,000.

Defendants presented evidence, including their own testimony, which tended to establish alibis to the effect that at the time of the robbery of the grocery store in Henderson, both of them were in Richmond, Virginia. In particular, defendant Boyd was at his home in Richmond with his wife until approximately 9:45 on the evening of 21 April 1979. Until approximately 9:30 that evening, Boyd and his wife had been entertaining guests in their home. Two of these guests, John Boyd, defendants's brother, and Garland Legrand, a friend of defendant's, testified that they had been at defendant's house with their wives drinking alcoholic beverages and playing cards. After the guests left, defendant Boyd drove to Henderson to visit a friend he had met four weeks earlier in Richmond, arriving in North Carolina at approximately 11:30 p.m. Unable to find his friend, defendant Boyd drove to a nightclub in Warren County. He left the establishment between 1:30 and 2:00 on the morning of 22 April 1979 and drove back to Richmond.

Defendant Milby testified in his own behalf. A resident of Richmond, Milby had previously been employed with Boyd at a construction company. According to his testimony, Milby spent the

date of 21 April 1979 in Richmond with his stepfather, mother and a sister.

Both defendants were found guilty as charged. Each defendant received a sentence of twenty to twenty-five years imprisonment.

The Court of Appeals granted defendants a new trial, concluding that the trial court had erroneously admitted into evidence two handguns which had been seized from defendants at the time of their arrest. The state's petition for discretionary review pursuant to G.S. § 7A-31 was allowed by this court on 16 September 1980.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Lucien Capone III, for the State.*

*George T. Blackburn II for defendant Charles Linwood Boyd.*

*Linwood T. Peoples for defendant Zebedee Milby.*

BRITT, Justice.

Because of defendants' failure to preserve for our review the other assignments of error which they presented to the Court of Appeals by bringing them forward in their new briefs, *see* N.C. R. App. P. 16, only one question is properly before this court for our consideration: Did the Court of Appeals commit error in awarding defendants new trials because of the introduction into evidence by the state of two handguns which had been seized at the time of their arrest? We conclude that the Court of Appeals was in error, and, accordingly, we reverse its decision.

The handguns in question were seized from defendants on the evening of 26 May 1979 when they were arrested. On that date, the Henderson Police Department received a communication from the Richmond Police Department through the Police Information Network (PIN) to the effect that defendant Boyd and a companion had left Richmond in a Ford Pinto bearing Virginia license plate number JGD 732. The message indicated that both individuals were armed. The dispatch also advised that the license plate was invalid because the vehicle to which it had been issued had been given a new license plate, suggesting that the particular license plate had been stolen or lost.

When the message was received in Henderson, elements of the

State Highway Patrol, the Henderson Police Department, and the Vance County Sheriff's Department were posted along Interstate Highway 85 for the purpose of intercepting the vehicle.

Late in the evening of 26 May, Officer C. G. Todd of the State Highway Patrol stopped a car meeting the description contained in the PIN dispatch on Norlina Road across from an A.B.C. store. Defendant Boyd was driving the Pinto, and defendant Milby was seated in the passenger seat. After repeated requests, defendants removed themselves from the automobile. When defendant Milby got out of the car, Officer J. W. Prather of the Vance County Sheriff's Department, who had arrived on the scene in the interim, observed a .22 caliber pistol lying on the seat upon which defendant Milby had been riding. This pistol was later offered by the state as exhibit number 2. At approximately the same time, defendant Boyd was searched, and a .32 caliber pistol was seized which was later offered by the state as exhibit number 1.

During her direct examination, Ms. Fuller testified at length concerning the conduct of defendants during the course of the robbery. In the course of describing the exit of defendant Boyd from the store's office after he had emptied the safe, Ms. Fuller testified that

> I didn't try to stop him because of company policy. He started out the door. I looked at his face. I closely observed it. I could see where the gun was at that time. He never took the gun off of me the whole time. I can describe that gun. It was a long, narrow gun. It was sort of a brass look. As he left, the brown bag tore and two bags inside fell out. He went out to Zeb on the floor and told him to come back for the two bags of money.

> Zeb came to the office. He stood about five feet from me and pointed a gun at me. The gun was the same kind as the other one. He told me to hand him the money bags. I handed him the bags.

It will be observed that not only did Ms. Fuller describe the pistol used by defendant Boyd while he was in the store's office but also that she tied its description in with that of defendant Milby's gun. It was the alleged disparity between Ms. Fuller's testimony and the state's offer of proof in the introduction of state's exhibits one and two which constituted the basis for the award of a new trial by the

Court of Appeals.

At no time did the state connect the pistols which were seized from defendants at the time of their arrest and subsequently introduced as exhibits one and two with the pistols which had been utilized in the robbery of the grocery store. Nor was there any testimony to the effect that the exhibits were similar to those actually employed by defendants. The Court of Appeals concluded that the admission into evidence of these handguns was prejudicial error because there was no evidence that either gun matched the description given by Ms. Fuller. *State v. Milby & Boyd*, 47 N.C. App. at 671, 267 S.E.2d at 595. We hold that the Court of Appeals was in error for two reasons.

First, on the basis of the record which is before us, we are unable to conclude that the admission of the exhibits by the trial court was in fact error. The exhibits in question have not been placed before this court for its examination. Nor has there been any stipulation placed in the record which would serve to describe the exhibits for us. In other words, we are unable to determine that there was indeed a discrepancy between the weapons which were used in the commission of the armed robbery and the exhibits about which defendants now complain.

A ruling of the trial court on an evidentiary point is presumptively correct, and counsel asserting prejudicial error must demonstrate that the particular ruling was in fact incorrect. *See generally* 1 Stansbury's North Carolina Evidence § 27 (Brandis Rev. 1973). Where the matter complained of does not appear of record, appellant has failed to make the irregularity manifest and it will not be considered as a basis for prejudicial error. *E.g., State v. Hilton*, 271 N.C. 456, 156 S.E.2d 833 (1967); *State v. Duncan*, 270 N.C. 241, 154 S.E.2d 53 (1967). It is the duty of an appellant to see that the record on appeal is properly made up and transmitted to the appellate court. *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969). While it is true that defendants asserted in their brief before the Court of Appeals that the exhibits are short, dark-barreled pistols, no description of the exhibits is part of the record, nor are the exhibits filed with our clerk. It is our conclusion that the admission of an exhibit cannot be held to be prejudicial error when the exhibit complained of or a description of same, does not appear of record in some fashion. *Compare Consolidated Vending Co. v. Turner*, 267 N.C. 576, 148 S.E.2d 531 (1966); *Cudworth v. Reserve Life Insurance*

*Co.*, 243 N.C. 584, 91 S.E.2d 580 (1956); *see also State v. Samuel*, 27 N.C. App. 562, 219 S.E.2d 526 (1975).

Second, even assuming *arguendo* that the exhibits were admitted erroneously, we are unable to conclude that defendants were prejudiced by their admission into evidence. Ms. Fuller and Mr. Twisdale positively identified defendant Boyd as being the robber who was in the store's office emptying the safe. Defendant Milby was identified by all three of the state's witnesses as being the robber who was positioned at the second checkout stand at the front of the store. There was no hesitancy or equivocation on the part of the state's witnesses in making these identifications.

It is well-established that the burden is on the appellant not only to show error but also to show that he suffered prejudice as a result of the error. *E.g., State v. Chapman*, 294 N.C. 407, 241 S.E.2d 667 (1978). The test for prejudicial error is whether there is a reasonable possibility that the evidence complained of contributed to the conviction, G.S. § 15A-1443 (1978), not whether the appellate court is able to conclude beyond a reasonable doubt that the evidence was harmless to the rights of a defendant. The latter standard is appropriately invoked only in matters of constitutional dimension. *State v. Heard & Jones*, 285 N.C. 167, 203 S.E.2d 826 (1974). In view of the overwhelming evidence which was presented by the state, as well as the quality of the evidence, we conclude that there is no reasonable possibility that the verdicts returned by the jury were affected by the introduction of the handguns in question.

The decision of the Court of Appeals is

Reversed.

Justice MEYER did not participate in the consideration or decision of this case.