STATE OF NORTH CAROLINA v. BEVERLY ELAINE TATE

No. 8121SC1280

(Filed 18 May 1982)

**Criminal Law § 73.2— testimony not hearsay—exclusion as prejudicial error**

In a prosecution for various offenses arising from defendant's alleged delivery of methaqualone at a garage and body shop, defendant's proffered testimony about a conversation with the garage owner in which the owner stated that he had important business to take care of and would see defendant later at a barbecue stand did not constitute hearsay since it was not offered to prove the truth of the matter asserted but was offered to explain defendant's subsequent conduct in quickly leaving the garage, and the exclusion of such testimony constituted prejudicial error where the State's case against defendant was based entirely on circumstantial evidence and the testimony was the only evidence tending to show why defendant left the garage so quickly.

Judge VAUGHN dissenting.

APPEAL by defendant from *Walker, Judge.* Judgment entered 5 August 1981 in Superior Court, FORSYTH County. Heard in the Court of Appeals 6 May 1982.

The defendant was charged with conspiracy to traffic in methaqualone, delivery of methaqualone, felonious trafficking in methaqualone and feloniously transporting methaqualone. The jury found her guilty on all charges. From a sentence of imprisonment of ten years maximum and five years minimum, defendant appealed. Other facts pertinent to the resolution of this appeal are contained in the opinion of the court.

*Attorney General Edmisten by Special Deputy Attorney General John R. B. Matthis and Associate Attorney John F. Maddrey for the State.*

*Morrow and Reavis by John F. Morrow for the defendant-appellant.*

MARTIN (Robert M.), Judge.

The State's evidence consisted primarily of the testimony of two undercover agents, M. D. Robertson and Susan G. Forrest. They testified that Agent Robertson had arranged to purchase 1200 quaaludes from Donald Watson at his garage and body shop on 23 January 1981. Watson told them that his female source of supply would deliver the drugs to him at approximately 12 noon. The agents began surveillance of the garage at approximately 12 noon on 23 January 1981. At 12:20 the defendant arrived in her car, entered the garage and within a minute thereafter exited the garage. The agents noticed that she had her hand inside her coat as though she was carrying something on the way in but that her hand was outside her coat as she left the garage. After defendant departed, Donald Watson motioned Agent Robertson inside where Robertson purchased 1200 quaaludes.

The defendant's evidence tended to show that she went to Donald Watson's garage on 23 January 1981 to make her monthly payment for repairs he had done on her car and to discuss some problems with the repairs. Earlier that day Franklin Watson, Donald Watson's brother, had called defendant. She told him that she was going to the garage to make the payment, and they agreed to meet at the garage and have lunch nearby. The trial

court would not permit the defendant to testify to the conversation between herself and Donald Watson when she entered the garage. The Court said, "I'm not going to allow going into what a third party says." The defendant excepted and presented the following testimony on *voir dire:*

> When I entered Mr. Watson's office and I pushed the bag across and sat down on the corner of his desk and I started to talk to him about when he could possibly repaint the roof of my car, and Don told me, he said, "I have some urgent business to take care of." He said, "If you're going up to the barbecue stand with my brother to eat lunch, as soon as I get finished with it, I'll be right, come up there with you and I'll be glad to come up with a date we can repaint your car." So he rushed me, he literally rushed me out of the office, and he said there was a guy waiting outside and he had something to take care of.

The trial court presumably excluded defendant's testimony about her conversation with Donald Watson because it was hearsay. Whenever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. If offered for any other purpose, it is not hearsay. 1 Stansbury's N.C. Evidence § 138 (Brandis rev. 1973). In this case the excluded evidence was not offered to prove the truth of the matter, that is, that Donald Watson had urgent business to take care of and that he would see defendant later at the barbecue stand. Rather this evidence was offered to show defendant's state of mind, to explain her subsequent conduct of leaving the garage. Thus this testimony was not hearsay and its exclusion was error. *See e.g. State v. Potter,* 295 N.C. 126, 244 S.E. 2d 397 (1978), (victim's widow's testimony — that she had heard that defendant threatened to kill her husband — admissible to show why she called sheriff); *State v. Irick,* 291 N.C. 480, 231 S.E. 2d 833 (1977), (testimony of recipient as to radio dispatches from one officer to another admissible to explain officer's subsequent conduct); *State v. Thomas,* 35 N.C. App. 198, 241 S.E. 2d 128 (1978), (witness testified she heard on radio about store robbery, admissible to explain why she remembered the man at store).

Even so, the State submits that any error in excluding defendant's testimony did not amount to prejudicial error. The test

for prejudicial error is whether there is a reasonable possibility that the evidence complained of contributed to defendant's conviction. *State v. Milby and State v. Boyd,* 302 N.C. 137, 273 S.E. 2d 716 (1981). Here the State's case against defendant was based entirely on circumstantial evidence. Defendant's testimony was the only evidence that tended to show why defendant left the garage so quickly. Under these circumstances we cannot say that there is no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . . ." N.C. Gen. Stat. § 15A-1443(a); *State v. Culpepper,* 302 N.C. 179, 273 S.E. 2d 686 (1981). Thus the exclusion of defendant's testimony about her conversation with Donald Watson was prejudicial error.

We do not consider defendant's remaining assignments of error because they are not likely to recur on retrial.

New trial.

Judge ARNOLD concurs.

Judge VAUGHN dissents.

Judge VAUGHN dissenting.

I do not agree that the exclusion of the evidence quoted by the majority must result in a new trial. The majority states that defendant's testimony was the only evidence that tended to show why defendant left the garage so quickly. However that may be, the *excluded* testimony was not the only testimony by defendant as to why she left so quickly. She testified that, prior to going to the garage, she had discussed a lunch date with one Frankie Watson, who later met her at the garage. The pair talked for about five minutes in front of the garage. She then testified, "I told him I was going *to run in the office and give Don $200.00 and I would be right back* out and help him walk up to the barbecue stand and go eat with him." (Emphasis added.) She then testified as to what happened after she entered Donald Watson's garage:

> "He has a big desk in that office and a couch. I sat down on the desk and I happened to push and put my hands on a bag that was sitting there and push something and im-

mediately was told something. I said, 'Listen, I'll come back and give you the $200.00 after you got [*sic*] finished taking care of what you got to take care of. I'm going up to the barbecue stand with your brother and when you have finished doing what you got to do, come up and get me and then I'll finish talking to you about my vehicle.' "

In light of the foregoing, I fail to see how the exclusion of the testimony quoted by the majority could have had the slightest effect on the trial.