PRESTON CUMMING & E. J. LILLY, Partners, &c. v. D. D. BARBER.

*Contract—Evidence—Issues—Insurance—Assignment.*

1. Where parties reduce their entire agreement to writing, whether under seal or not, parol evidence will not be admitted to alter it unless for fraud or mistake; but if the whole contract is not put in writing, or if the instrument is ambiguous in meaning, parol evidence is admissible, not to contradict but to make plain the agreement of the parties.

2. A declaration of a party to such agreement, expressive of his understanding of it, is competent against his assignee, though made prior to the assignment.

3. It appearing that the written contract is uncertain in its terms, it is proper to submit to the jury an issue as to the agreement between the parties.

4. The submission of irrelevant or immaterial issues to the jury is not, will not, warrant a new trial, where it cannot be seen that the appellant was prejudiced thereby.

5. Where, in a lease of a mill and fixtures, it was stipulated that the lessee should insure the property for a fixed sum in the name and for the benefit of the lessor, and that upon the destruction of the property by fire the lessee had the option to rebuild—in which event be entitled to the insurance money—or pay a certain sum as the value of the property, and the property was destroyed, and the lessee offered to rebuild if the insurance money was paid to him, but the lessor refused to do so until the rebuilding was complete; *Held*, that the lessee was discharged from liability on his contract.

CIVIL ACTION, tried before *Clark, J.,* at Fall Term, 1886, of the Superior Court of NEW HANOVER.

The plaintiffs claimed as assignees of W. F. Monroe, and alleged that on the 27th of December, 1882, the said Monroe and the defendant Barber entered into a written contract as follows :

" That I, the said W. F. Monroe, of the first part, for and in consideration of the sum of $1,000 to me in hand paid by the

said D. D. Barber, of the second part, the receipt of which is hereby acknowledged, do rent or lease unto the said Barber my saw mill, grist mill and shingle machine * * * for a term of twelve month. * * * Said Barber is to have full right to use this property to saw lumber, &c., * * * but must keep all in good order, must put up the grist mill, &c., * * * and furnish a new 8-inch 4-ply belt (and other things, naming them,) at the expiration of the lease. Said Barber is to have mill and fixtures insured in Monroe's favor for at least $1,500 in some good and reliable company, and the said Barber is to pay for this insurance, and give the policy to Monroe or his agent. (Interlined as follows: Mill is valued at $5,000; should a total loss occur, Barber makes good the difference or replaces mill as good.)

" We, the said Monroe and Barber, do agree to each select one man, and those to select the third, to examine this property and to ascertain its true present condition; and the said Barber does hereby covenant and agree to return this property and machinery in as good repair and condition as he receives it, or make good the deficiency in money of legal tender. The said D. D. Barber is to bear all losses by fire or other accidents which may occur, and the said W. F. Monroe takes no risk whatever, nor in any event is he to sustain any losses. * * * Value of mill $5,000."

Signed by the parties.

It was alleged, in substance, that it was agreed that the true value of the mill property was $5,000, and in case of fire Barber should either replace the property in as good condition as before, or else pay the difference between the sum insured ($1,500) and the agreed value ($5,000).

There was a second cause of action, not material to be stated, as there is no exception relating thereto.

The defendant admitted that there was a written contract on 27th December, 1882, but denied that it was as set out by the plaintiff, and says, in substance, that the interlineation

has been made since the contract was entered into, and with-out the knowledge, consent or ratification of the defendant; that the property was not worth more than $4,000, and that its real value was to be ascertained by parties to be selected ; that he was to insure it in the sum of $1,500, and turn the policy over to Monroe, and that the property was to be returned to Monroe in as good condition as when received, or that he was to make good the difference, and in the event of destruction by fire, he was to replace it in as good condition as before, using the insurance money for that purpose, or else pay the difference between the value of the property and the insurance, but denied that the stipulated value was $5,000, or in the event of the loss by fire it was to be re-built at $5,000, or that it was ever intended by the parties, or either of them, to put an agreed value upon the property, altogether fictitious and far above its real value.

That the defendant did insure the property in the sum of $1,500, and delivered the policy to Monroe; that after the fire the said Monroe assigned the policy to D. C. Baum & Co., of Savannah, who have collected it; that no part of it has been paid to him ; that Monroe has left the State, and is in-solvent, and that he has no remedy against him ; that he has always been ready and willing to have the property valued by the arbitrators, and on delivery to him of the insurance money to replace it in as good condition as it was before, and he repeatedly offered so to do.

There were other matters presented by the answer and the replication, not material to the questions involved in the appeal, which are substantially:

1. Whether by the contract the value of the property was fixed by the parties at $5,000, as insisted by the plaintiffs, or whether it was to be ascertained by the parties to be selected, as insisted by the defendant?

2. Whether (the property having been destroyed by fire) the defendant elected to replace it, and if so, whether he was

entitled to the insurance money to be used in replacing it as he insists, or whether he was to have the insurance money only after the property was replaced. as insisted by the plaintiffs.

3. If the defendant was entitled to have the insurance money to be used in replacing the property, did the plaintiffs or their assignor put it out of the power of the defendant to get it to be so used, by causing delay in the collection of it and the application of it to the use of the assignor after it was collected ?

There is much presented in the record which need not be considered, and only so much of the evidence as relates to the exceptions taken by the plaintiff is referred to.

Upon the verdict the Court gave judgment on the first cause of action against the plaintiff, from which he appealed.

*Mr. D. L. Russell,* for the plaintiffs.
*Messrs. Geo. V. Strong* and *Thos. Strange,* for the defendant.

DAVIS, J., (after stating the case).   The plaintiff testified in his own behalf, his evidence tending to show that the contract was as alleged by him.

The defendant was then examined as a witness, the tendency of his evidence being to show that the contract was as alleged by him.

1. In the course of the examination of this witness it was proposed to show by him "that as a part of the agreement then made between the parties, but not reduced to writing, it was agreed that if Barber should take the option to replace the mill as agreed on, he was to have the insurance money for the purpose of doing so.

This evidence was objected to by the plaintiff, but received by the Court and constitutes the first exception.

It is a well established general rule, that if the parties reduce their entire contract or agreement to writing, whether

under seal or not, the Court will not hear parol evidence to vary or change it unless for fraud, mistake or the like; but if it appear that the entire agreement was not reduced to writing, or if the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent, not to contradict, but to show and make certain what was the real agreement of the parties, and, in such a case, what was meant is for the jury under proper instructions from the Court.

In the case before us, it is conceded that if the defendant should elect to replace the property he was to have the insurance money—the only question is as to when? Whether before, to be used in replacing it, as the defendant says, or after it should be replaced, as the plaintiff says, and upon this question the written instrument is silent. There is nothing said as to what disposition is to made of the insurance money if the defendant shall elect to replace the mill.

We think there was no error in admitting the testimony. The ruling of the Court is sustained alike by " the reason of the thing," and by abundant authority. *Johnston* v. *McRary*, 5 Jones, 369; *Twiedy* v. *Sanderson*, 9 Ired., 5; *Manning* v. *Jones*, Busbee, 368; *Sherrill* v. *Hagan*, 92 N. C., 345, and the cases cited therein.

2. The defendant offered the deposition of R. D. Paddison to show that contemporaneously with the written agreement, and as a part of it not reduced to writing, the defendant and Monroe agreed that if the former should choose to replace the mill, he was to have the use of the insurance money to do it with. This was admitted, under objection, by plaintiff, and is the 2d exception.

This objection was properly overruled for the same reason as the first.

3. The defendant then offered in evidence the following letter written by Monroe, the assignor of the plaintiffs, to the defendant:

"GLENNAN, GA., May 17th, 1883.

Dear Sir:—Yours received; facts noted.

I am truly sorry to hear of the burning of the mill, and would advise you to re-build at once. I would put in a new engine and fit it up all right. You can use the insurance money of course. I have the policies, and will send them in a few days.

Yours truly,

W. T. MONROE."

It appears from the record that this letter was written before the assignment by Monroe to the plaintiffs, which was in December, 1883, and it was clearly competent as tending to show that Monroe understood the agreement to be that the defendant, if he should re-build, was to have the insurance money.

5. For the same reason Monroe's letters of August 8th, 1883, and September 14, 1883, in regard to the delay in getting the insurance money, were admissible. These letters were also admissible as tending to show the cause of delay in collecting the insurance money.

6. The plaintiffs excepted to the 6th issue (by mistake number 5 in the case on appeal). That issue is: "Was it agreed between Monroe and the defendant, before Monroe's assignment to the plaintiffs, that defendant should have the use of the insurance money to replace the property with if he should take the option to do so?"

The ground of exception, as stated in the case, is "because it presented no question of fact, but one of law only, which the Court must decide, the entire contract, as alleged by either or both parties, being in writing, and because it sought to set up a contract subsequent to the contract declared on in modification of the latter, and amounting to a release of it, the plaintiff not having any notice of such defence, and such subsequent contract not having been set up or referred to in

the answer, and because, generally, in the pleading and evidence the issue should not be submitted."

This exception is founded upon the triple misapprehension—1st, in supposing that the entire contract, as understood by both parties, (or either of them, as to that,) was in writing; 2d, that the written agreement itself determined, or could determine, whether the defendant would elect, in the contingency contemplated, to replace the property; and 3d, that it modified or released the original contract. It was of the very essence of the controversy, and it is impossible to see how the plaintiffs could reasonably be misled by it.

6. The case stated that "on the argument of the admissibility of the letters and other evidence to show past agreement, defendant's counsel contended that if the agreement between Monroe and Barber had been that if the mill should be replaced, the assured should also keep the insurance money, it would have been a wager policy, and opposed to good morals and void; whereupon plaintiff's counsel admitted that it was not the intention of the parties, Monroe and Barber, that if Barber saw fit to replace the mill, and did so, that Monroe should keep the insurance money, but in that event their intention was that whenever Barber should replace the mill Monroe was to turn over to him the insurance money, and therefore the sixth (seventh) issue was submitted as follows:

" Was the agreement that the defendant should have the insurance money after he should replace the mill and property, and did the said Monroe receive the money and use it, and put it out of his power to comply with his agreement, and did he mislead the defendant so as to delay the execution of his option?"

The defendant had alleged, by way of defence and counterclaim for damages, among other things, that by reason of neglect and misrepresentations on the part of Monroe, there was a controversy with the insurance company and delay,

whereby he was deprived of the use of the insurance money in refitting the property for use, and that he thereby lost the benefit of his lease, by which he was damaged. This was denied by the replication.

As bearing upon the 7th issue there was evidence tending to show that after the fire Monroe sent the insurance policy to one of the plaintiffs with "instructions to hold it until Barber replaced the burned Mill and then to give it to him." And Barber "insisted that he was entitled to the policy or the proceed of it before he began to re-build," and that he was ready and always had been to re-build as soon as the money was collected and paid to him. There was also evidence tending to show that Monroe had assigned the policy to Bacon & Co., of Savannah, Georgia.

Ten issues were submitted to the jury, involving questions controverted by the parties.

In response to two of these, the 2d and 3d, the jury had found as facts that the defendant offered "to rebuild the mill and replace the property in as good condition as he had received it if Monroe, the plaintiff, would allow him the $1,500 insurance money," and that they refused or placed it out of their power to do so, and in respect to the 6th issue, already cited, they responded "yes."

The responses to these issues were sufficient to determine the controversy in favor of the defendant, but it is insisted by the plaintiff that the 7th issue was improperly submitted because inconsistent with and contradictory of the 6th issue.

The first part of the issue "was the agreement that the defendant should have the insurance money after he should replace the mill and property," is not raised by the complaint, answer and replication, but from the statement of the case seems to have been framed to meet a phase presented upon the argument by the counsel for the plaintiffs.

The remaining part of it is fairly raised by the allegations and denials, and is substantially met by the 3d issue, in re-

sponse to which the jury found that the plaintiffs refused or placed it out of their power to allow the defendant the use of the insurance money to replace the mill. So no part of the issue was needed to determine the controversy. Was it in any way prejudicial to the plaintiff?

The first part of it, as responded to by the jury, seems but an affirmation of the admission of plaintiffs, made by counsel on the trial, and the second part of it a declaration, that taking the agreement as so admitted, Monroe had received the money, used it, and put it out of his power to comply with the agreement, and we are unable to see how the apparent conflict between the 6th and 7th issues can prejudice the plaintiff. There is no view in which the discrepancy in the issues and the finding of the jury can affect the result.

This Court has several times held that the submissions of unnecessary or immaterial issues is not assignable as error, where it cannot be seen how the appellant is prejudiced thereby. *Perry* v. *Jackson*, 88 N. C., 103; *McDonald* v. *Carson*, 94 N. C., 497; *Cuthbertson* v. *The Insurance Company*, 96 N. C., 480.

Upon a review of his Honor's rulings, and the errors assigned in the record, we can see no error of which the plaintiffs can complain.

Affirmed.