DOUBLEDAY & LANIER v. THE ASHEVILLE ICE & COAL COMPANY.

(Decided May 3, 1898).

*Action for Damages for Breach of Contract—Contract, Construction of— Parol Evidence.*

1.  Where the whole of a contract is in writing and unambiguous verbal testimony cannot be allowed to contradict or explain it, and its construction is for the court; but where the contract is partly written and partly verbal and there is room for dispute, parol evidence is admissible and it is proper for the Court to leave to the jury the question of fact as to what the agreement was.

2.  A contract to store grapes in defendant's cold-storage room grew out of conversations and correspondence.    When the contract was made and the grapes were stored, the room was dry and in proper condition but they were subsequently spoiled by moisture caused by leakage or condensation.    Nothing appeared in the correspondence to show whose duty it was to put the room in good condition; *Held*, that the conversations were admissible on that question.

CIVIL ACTION tried before *Norwood, J.*, and a jury at August Term, 1897 of BUNCOMBE Superior Court.    The plaintiffs, claimed to have been endamaged to the extent of $658 by the negligence of the defendant in not keeping in proper condition a cold-storage room in which plaintiffs stored grapes for hire.    There was a verdict for the plaintiffs for $225.00 and from the judgment thereon the defendant appealed, assigning as error the admission of parol testimony to explain a contract entered into by letter correspondence.

DOUBLEDAY *v.* ICE AND COAL COMPANY.

*Messrs. W. W. Jones* and *Walter B. Gwyn* for plaintiff.

*Messrs. Merrimon & Merrimon* for defendant (appel-lant).

FAIRCLOTH, C. J.: The plaintiffs contracted to store grapes with the defendant company and it contracted to furnish them with cold storage room for the grapes at an agreed price. They also agreed on the temperature of the room. The grapes were stored and were damaged by leakage from above where the refrigerator and ice were kept, or by condensation produced by the admission of warm air through the door. It seems to be agreed, or at least fully shown, that the room was in good and proper condition when the grapes were deposited. The parties, however, warmly contest the question, Whose duty was it to keep the room in good condition according to the agreement? There was some conversation between the plaintiffs and one of the defendants on the subject, and thereafter several letters passed between the same parties on the subject. The defendant contends that the correspondence contains the whole of the contract, and that the verbal conversation forms no part of it and was incompetent, because the contract was in writing, and that it was the duty of the Court to construe the correspondence and charge the jury accordingly. The plaintiffs insist that the whole evidence was properly submitted to the jury and that it was their province to find out the contract. The Court adopted the plaintiff's contention and the defendant excepted. There were numerous prayers for instruction, and exceptions based on the view of the parties as to the main question above stated.

There is nothing expressly said in the letters as to the

duty of keeping the room dry and in suitable condition for storage purposes. The evidence to show the substance of the verbal conversation, admitted by the court, was conflicting. The plaintiffs testified that they asked Collins (one of the defendants) if he had any suitable place for storing grapes and keeping them until late in the season, and he replied that his company had suitable room, that it was dry. and, after referring to the right temperature, he said it was not necessary to go and see the room, that the room was all right. Plaintiffs said they did not see the room until after the grapes were spoiled. Collins denied this, and several witnesses on each side testified about the matter. In the first letter in evidence by the plaintiffs, June 29, 1895, he calls attention, by saying: "Have you forgotten about the cold storage I spoke to you about last Saturday?" to which the defendant replied. July 1, "I had not forgotten about our conversation . . . let us hear from you as early as you decide what you will do."

There is no question of fraud, mistake or misrepresentation in this case and the jury were so instructed.

It is well settled that where the whole of a contract is in writing and unambiguous, verbal testimony to contradict or explain it is inadmissible. It is then a question of construction for the court, but where the controversy turns upon the meaning of parties to a verbal agreement, or where it is part verbal and part written and there is room for dispute, or if the instrument is ambiguous, parol evidence is admissible, and it is proper for the court to leave to the jury the question of fact, what was the agreement of the parties in relation to such matter. *Islay* v. *Stewart*, 20 N. C., 160; *Cumming* v. *Barber*, 99 N. C., 332.

The verbal evidence and the correspondence consti-

tuted the evidence from which the jury's duty was to find the truth of the contention in this respect. We do not think that the charge of the Judge was subject to the criticism that if the jury believed one witness that they should find for the plaintiffs. The charge seems full, explicit and impartial. As the other prayers and exceptions hinged mainly upon the disposition of the main questions, we see no need to consider them separately. They were in many respects put out of the case by the verdict of the jury.

No error.