MOSLEY & MOSLEY BUILDERS, INC. v. LANDIN LTD., AND CARL W. JOHNSON

No. 8718SC231

(Filed 3 November 1987)

1. Evidence § 32.7— ambiguous lease provision—parol evidence

Where a written lease agreement gave defendants the right to relocate plaintiff's store within Phase I of a mall project but contained conflicting descriptions of the property included within Phase I, and plaintiff refused to relocate as directed by defendants on the ground that the new location designated by defendants was not within Phase I, extrinsic evidence was admissible to establish the intent of the parties as to the meaning of "Phase I" as used in the lease agreement.

2. Contracts § 26; Landlord and Tenant § 6.1— construction of lease—competency of evidence

In an action to recover damages for breach of a lease agreement which gave defendants the right to relocate plaintiff's store within Phase I of a mall project, a letter from the mall developer's architect to plaintiff, a building permit for Phase I of the mall project, and architectural drawings submitted with the application for a building permit were relevant to show that Phase I consisted of the first floors of two buildings and did not include the basement area of one building where defendants attempted to relocate plaintiff's store.

3. Landlord and Tenant § 13— refusal of tenant to relocate—eviction—breach of lease—sufficiency of evidence

Plaintiff's evidence was sufficient for the jury in an action for breach of a lease when defendants evicted plaintiff's store from a shopping mall because plaintiff refused to move the store to a basement location where it tended to show that the lease agreement gave defendants the right to relocate plaintiff's store within Phase I of the mall project; the lease itself was uncertain with respect to the area included within Phase I; and plaintiff and the original lessor intended Phase I to include only the first floors of two buildings.

4. Contracts § 28; Trial § 33— instructions—construction of lease provision—failure to explain applicable law

In an action for breach of a lease provision giving defendants the right to relocate plaintiff's store within Phase I of a shopping mall based on defendants' eviction of plaintiff from the mall because plaintiff refused to move its store to a basement location, the trial court erred in refusing to give defendants' requested instruction declaring and explaining the law with respect to

the jury's determination of the meaning intended by the parties of the term "Phase I" as used in the relocation provision of the lease.

**5. Damages § 13.2— breach of lease—lost profits—profits by replacement lessee**

In an action to recover for breach of a lease when defendants evicted plaintiff's Nuts N' Such business from a shopping mall and rented plaintiff's former space to a Peanut Shack franchise, the trial court did not err in permitting sales by the Peanut Shack franchise to be used as a basis for determining plaintiff's lost profits where plaintiff's Nuts N' Such business and the Peanut Shack franchise sold similar merchandise, and evidence of Peanut Shack's sales from plaintiff's former location was thus relevant to show the sales which plaintiff might reasonably have expected to make had it not been evicted.

**6. Damages § 3.5— breach of lease—lost profits for entire unexpired term**

If defendants breached a lease by evicting plaintiff's store from a shopping mall, plaintiff is entitled to recover its lost profits for the entire unexpired term of the lease irrespective of whether plaintiff continued to operate its store at another location.

**7. Rules of Civil Procedure § 15.1— denial of motion to amend complaint—unfair trade practices**

In an action for breach of a lease agreement, the trial court did not abuse its discretion in the denial of plaintiff's motion, made at the close of all of the evidence, to amend the complaint to allege that the defendants had engaged in unfair and deceptive trade practices and to ask for treble damages where plaintiff's counsel had expressly stated during the trial that plaintiff was not seeking treble damages, and it thus does not appear that such issue was tried with the implied consent of the parties. N.C.G.S. § 1A-1, Rule 15(b).

APPEAL by defendants and cross-appeal by plaintiff from *Hyatt, Judge.* Judgment entered 15 September 1986 in Superior Court, GUILFORD County. Heard in the Court of Appeals 29 September 1987.

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Joseph W. Moss and George W. Jarecke, for plaintiff appellee.*

*Douglas, Ravenel, Hardy, Crihfield & Lung, by Robert D. Douglas, III and John W. Hardy, for defendants appellants.*

MARTIN, Judge.

This is an action for damages for breach of a lease. By written lease agreement dated 16 February 1981, plaintiff leased from Pomona Associates certain retail store premises located "on the 1st floor of Building No. 1 (one) of the Project known as Pomona Factory Outlet Mall, Phase I . . ." (now Greensboro Outlet Mall)

in Greensboro, N.C. Plaintiff operated Nuts N' Such, a retail store selling nuts, candies and similar products in the leased premises. The term of the lease was for five years commencing in May, 1981; plaintiff was given an option to renew the lease for an additional five year term. Paragraph 28 of the lease agreement provided:

> 28. Landlord shall have the right to relocate Tenant, at Landlord's cost and expense, within Pomona Factory Outlet Mall, Phase I, upon sixty (60) days notice to Tenant, which relocation shall in no way affect the obligations and duties of either party hereunder. In the event Tenant refuses to accept the new location designated by Landlord, Landlord at its option may cancel and terminate this Lease by an additional thirty (30) days written notice to Tenant.

On 30 August 1981, defendants purchased the mall from Pomona Associates.

On 29 June 1983, defendants notified plaintiff that it would be required to move its retail store from the leased premises near the entrance to the mall to a space located in the basement of Building No. 1. Plaintiff was advised that its lease would be terminated if it refused to relocate to the new space. Plaintiff refused to move, objecting to the relocation on the grounds that the new space was not within Phase I of the mall. On 4 October 1983, defendants evicted plaintiff from the premises. Plaintiff leased space in a shopping mall in Durham and operated its business in that location until it sold the business in January 1986. The space formerly occupied by plaintiff at the Greensboro Outlet Mall was leased by defendants to a Peanut Shack franchise, which sells products substantially similar to those sold by plaintiff. There was evidence tending to show that defendants had entered into negotiations with the Peanut Shack franchisee for the space leased by plaintiff prior to giving plaintiff notice to relocate.

At the close of all the evidence, plaintiff moved to amend the complaint to allege that defendants had engaged in unfair and deceptive trade practices in violation of G.S. 75-1.1 and to pray for treble damages pursuant to G.S. 75-16. The motion was denied. The jury found that defendants had breached the lease agreement and awarded damages of $120,000.00 to plaintiff. De-

fendants' post-verdict motions were denied and judgment was entered on the verdict.

Defendants appeal, assigning error to a number of the trial court's evidentiary rulings and to its refusal of their request for jury instructions. By cross-appeal, plaintiff contends that the trial court erred by denying its motion to amend to conform its complaint to the evidence and by refusing to allow evidence of damages for the period following the 1986 sale of its Nuts N' Such business. Because the court's instructions on the issue of defendants' breach of the lease were incomplete, and because plaintiff was prevented from presenting competent evidence of all of its damages, we order a new trial.

Paragraph 28 of the lease agreement gave defendants the right to relocate plaintiff's store within Phase I of the mall. Plaintiff refused to relocate as directed by defendants on the grounds that the new location designated by defendants, in the basement of Building No. 1, was not within Phase I. Paragraph 1.(a) of the lease agreement described the leased premises by reference to a floor plan and a site plan of the Pomona Factory Outlet Mall, both of which were attached to, and incorporated in, the lease. The site plan showed two buildings and was marked with the legend "Phase One Building Area—78760 SF." Testimony at the trial indicated that the first floor area of both buildings totalled approximately 78,760 square feet. Paragraph 7 of the lease agreement, however, provided for allocation of real property taxes on a percentage basis, calculated "by dividing the number of square feet of the Leased Premises by the number of leaseable square feet in Phase I of Pomona Factory Outlet Mall." For the purposes of allocating real property taxes, the lease agreement acknowledged that the "[t]otal leaseable square feet in Phase I of Pomona Factory Outlet Mall" consisted of 130,000 square feet. There was testimony indicating that the 130,000 square foot area included the basement of Building No. 1. No other provision of the lease agreement described "Phase I."

[1] Defendants contend that the trial court erred by admitting the testimony of plaintiff's president, William Sanders Mosley, and of Bobby Slate, a leasing agent for Pomona Associates, concerning the meaning of the relocation provision contained in Paragraph 28 of the lease agreement. The testimony of both wit-

nesses tended to show that, during negotiations leading up to the lease agreement, Slate had specifically told Mosley that plaintiff could be relocated only to other space on the first floor of Building No. 1 or Building No. 2. Mosley testified, in addition, that Slate had represented to him that the relocation provision would not be applicable after the mall had opened. Defendants contend that such testimony contradicts the terms of the written lease and violates the parol evidence rule. We disagree.

"The general rule is that when a written instrument is introduced into evidence, its terms may not be contradicted by parol or extrinsic evidence, and it is presumed that all prior negotiations are merged into the written instrument." *Root v. Allstate Ins. Co.*, 272 N.C. 580, 587, 158 S.E. 2d 829, 835 (1968). However, " 'if the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent, not to contradict, but to show and make certain what was the real agreement between the parties.' " *Id.* at 590, 158 S.E. 2d at 837, *quoting Cumming v. Barber*, 99 N.C. 332, 5 S.E. 903 (1888). In the present case, the written lease contained conflicting descriptions of the property included within Phase I of the mall project, leaving uncertain the extent to which defendants could require plaintiff to relocate under Paragraph 28. Thus, extrinsic evidence was admissible to establish the intent of the parties as to the meaning to be given "Phase I" as used in the lease agreement. "An interpretation given a contract by the parties themselves prior to the controversy must be given consideration by the courts in ascertaining the meaning of the language used." *Shoaf v. Shoaf*, 14 N.C. App. 231, 235, 188 S.E. 2d 19, 22, *rev'd on other grounds*, 282 N.C. 287, 192 S.E. 2d 299 (1972).

[2] Defendants advance similar assignments of error to the admission of four exhibits offered by plaintiff as evidence that Phase I of the mall did not include the basement area to which defendants attempted to relocate plaintiff's store. Plaintiff's Exhibit 29 was a letter from Pomona Associates' architect to Mosley, stating that Phase I consisted of 78,760 square feet on the ground floors of both buildings and that other floors were to be completed in subsequent phases. Plaintiff's Exhibit 48 was the building permit issued by the City of Greensboro Building Inspection Department for Phase I of Pomona Factory Outlet Mall. Plaintiff's Exhibit 9B consisted of architectural drawings submit-

ted to the City of Greensboro in connection with Pomona Associates' application for a building permit, and Exhibit 9C consisted of architectural drawings for the basement area of Building No. 1 and are entitled "Ground Floor Plan, Phase III." According to the testimony of the architect, the drawings contained in Exhibit 9C were prepared for defendants after they had purchased the mall from Pomona Associates.

We note initially that neither Exhibit 9B nor Exhibit 9C are included in the record before us. As appellants, defendants have the responsibility to see that the record is complete and that it includes such exhibits as may be necessary for an understanding of the errors assigned. App. R. 9(d); *State v. Milby*, 302 N.C. 137, 273 S.E. 2d 716 (1981). "[T]he admission of an exhibit cannot be held to be prejudicial error when the exhibit complained of or a description of same, [sic] does not appear of record in some fashion." *Id.* at 141, 273 S.E. 2d at 719.

Defendants argue that even if the exhibits were not barred by the parol evidence rule, they were not relevant to the question of the parties' intent at the time they entered into the lease. We disagree. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." G.S. 8C-1, Rule 401. The architect for Pomona Associates testified that the site plan contained in Exhibit 9B was identical to the site plan attached to plaintiff's lease. It showed that Phase I of the mall totalled 78,760 square feet and consisted of the first floors of Buildings One and Two and a connecting corridor. The building permit was issued on the basis of these drawings approximately two weeks before plaintiff entered into the lease agreement. The architect also testified that drawings for expansion into the basement of the project had not been prepared when the building permit was issued. In our view, this evidence was relevant to show Pomona Associates' intent to develop the mall in phases and to show that the first phase consisted of the first floors of the two buildings. The architect's letter to Mosley is corroborative of his testimony at the trial. These assignments of error are overruled.

[3] Defendants also assign error to the denial of their motions for directed verdict and for judgment notwithstanding the ver-

dict. The question presented by both the G.S. 1A-1, Rule 50 motions for directed verdict and for judgment notwithstanding the verdict is the same: whether the evidence, considered in the light most favorable to the nonmovant, giving him the benefit of all reasonable inferences and resolving all conflicts in the evidence in his favor, is sufficient to take the case to the jury. *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). The motion should be denied unless it appears, as a matter of law, that the plaintiff is not entitled to a recovery upon any view of the facts reasonably established by the evidence. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977).

Applying the foregoing standard to the evidence in the present case, we conclude that defendants' motions were correctly denied. The issue is whether defendants breached the lease by terminating plaintiff's lease after plaintiff refused to relocate its store to the basement of Building No. 1 of the mall. Resolution of the issue depends upon whether defendants had the right to require such a move pursuant to paragraph 28 of the lease, which limited the landlord's right of relocation to another space within Phase I. The lease itself is uncertain and ambiguous with respect to the area included within Phase I of the project. When considered in the light most favorable to plaintiff, there was sufficient evidence to permit a jury to find that at the time they entered into the lease, plaintiff and Pomona Associates mutually intended and understood Phase I to include only the first floors of the two buildings. Whether defendants had the right to relocate plaintiff's store and to evict plaintiff upon its refusal to relocate was properly an issue for the jury.

[4] Defendants submitted a timely written request for instructions, including a request that the jury be instructed with respect to its duty to determine, from the evidence, the meaning which the parties intended to give to the term "Phase I" as used in the lease. The trial court refused the request, and, with respect to the issue of defendants' breach of the lease, simply defined the terms "contract" and "breach of contract." Defendants assign error; their exception is well taken.

Where, as in the present case, parol evidence is admissible to explain the meaning of ambiguous language used in a contract, it is for the jury, under proper instructions, to determine what

meaning the parties intended to give to the language. *Root v. All-state Ins. Co., supra; Parker Marking Systems, Inc. v. Diagraph-Bradley Industries, Inc.*, 80 N.C. App. 177, 341 S.E. 2d 92, *disc. rev. denied,* 317 N.C. 336, 346 S.E. 2d 502 (1986). Though the trial court is no longer required to explain the application of the law to the evidence, G.S. 1A-1, Rule 51(a) (1985), it remains the duty of the court to instruct the jury upon the law with respect to every substantial feature of the case. The meaning which the parties intended to give the term "Phase I" as used in the relocation provision of the lease agreement, and the manner in which the jurors were to determine that meaning, were substantial features in this case. By their requests for instructions, defendants called to the attention of the trial court the necessity that the jurors be provided with legal guidance in their determination of the meaning of the disputed provisions of the lease. "The heart of a contract is the intention of the parties and is to be ascertained from the language used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Peaseley v. Virginia Iron, Coal and Coke Co.*, 282 N.C. 585, 597, 194 S.E. 2d 133, 142 (1973). The failure of the trial court to declare and explain the law with respect to the issue was prejudicial error, entitling defendants to a new trial.

Notwithstanding our award of a new trial, we deem it appropriate to address assignments of error brought forward by both parties with respect to the admission and exclusion of evidence on the issue of plaintiff's damages, inasmuch as these matters are likely to recur at retrial.

[5] As damages for breach of the lease, plaintiff sought to recover lost profits. Testimony by plaintiff's president, Mr. Mosley, tended to show that the operation of its store at defendants' mall had been profitable in 1981 and 1982 and that net sales had increased for each month in 1983 as compared with the same month in 1982. Over defendants' objection, Mosley was permitted to give testimony as to the amount of profits lost by plaintiff from the time of its eviction in October 1983 until it ceased business in its Durham location in January 1986. Mosley calculated plaintiff's lost profits by comparing plaintiff's actual sales at the Durham location to actual sales by the Peanut Shack franchise at plaintiff's former location, and applying to the difference the percentage of profit which plaintiff had experienced on its sales

prior to being evicted by defendants. Defendants contend that because plaintiff's marketing and management practices differed substantially from those of the Peanut Shack franchise, it was unreasonably speculative to allow the latter's sales to be used as a basis for determining plaintiff's lost profits. We disagree.

Damages for breach of contract may include loss of prospective profits where the loss is the natural and proximate result of the breach. *Perkins v. Langdon,* 237 N.C. 159, 74 S.E. 2d 634 (1953). To prove lost profits, the injured party "must prove as part of his case both the amount and cause of his loss. Absolute certainty, however, is not required, but both the cause and the amount of loss must be shown with reasonable certainty." *Cary v. Harris,* 178 N.C. 624, 628, 101 S.E. 486, 488 (1919), *quoting Nance v. Western Union Tel. Co.,* 177 N.C. 313, 98 S.E. 838 (1919). If an established business is wrongfully interrupted, the damages can be proved by showing the profitability of the business for a reasonable time before the wrongful act. *Id.* It is only "when prospective profits are conjectural, remote, or speculative, they are not recoverable." *Perkins v. Langdon, supra,* at 173, 74 S.E. 2d at 645. *Accord Weyerhaeuser Co. v. Godwin Building Supply Co., Inc.,* 292 N.C. 557, 234 S.E. 2d 605 (1977).

Evidence that plaintiff's Nuts N' Such store had been profitable up until the time of the alleged breach, and that its sales had increased as new stores had opened in the mall, showed that the business "had been successfully conducted for such length of time that the profits thereof were reasonably ascertainable." *Perkins v. Langdon, supra,* at 174, 74 S.E. 2d at 646. Peanut Shack and Nuts N' Such sold similar merchandise; evidence of Peanut Shack's sales from plaintiff's former location was relevant to show the sales which plaintiff might reasonably have expected to make had it not been evicted. Differences in marketing techniques between the two stores went only to the weight to be given such evidence by the jury; these differences were not such as to render the evidence unreasonably remote or speculative upon the issue of plaintiff's opportunity to make future profits had it not been evicted.

[6] Apparently because plaintiff sold its Nuts N' Such store in Durham in 1986 and ceased business, the trial court refused to permit plaintiff to offer evidence of projected lost profits from the

time of the sale through the expiration of its lease in 1991. We hold that the exclusion of such evidence was error. Plaintiff relocated its store to the Durham mall only after being evicted from defendants' mall. While the business had made a profit at defendants' mall, the Durham location proved unprofitable. If, by evicting plaintiff from the Greensboro mall, defendants breached the lease, plaintiff is entitled to recover all damages actually and proximately resulting from the breach, including lost profits for the entire unexpired term of the lease, irrespective of whether it continued to operate its store at another location.

The excluded evidence consisted, in part, of the testimony of a certified public accountant as to his projections of profits which could have been realized by plaintiff during the remaining term of the lease. The accountant's projections were based upon plaintiff's actual past operating expenses, adjusted yearly to account for inflation; its rental expense as provided by the lease; the cost of its inventory based upon a fixed percentage of its projected sales; and Peanut Shack's actual 1985 sales from plaintiff's former location in defendants' mall. We hold that the proffered evidence provided a method of calculating plaintiff's loss of prospective profits which was not unreasonably speculative or remote and provided a basis for the measurement of plaintiff's damages with sufficient certainty as to be competent and admissible.

[7] Plaintiff also assigns error to the denial of its motion, pursuant to G.S. 1A-1, Rule 15(b), to amend its pleading to allege that defendants had engaged in unfair and deceptive trade practices in violation of Chapter 75 of our General Statutes and to seek treble damages and attorneys' fees. While such amendment of pleadings may be made, even late in the trial or after judgment, in order to conform the pleadings to the evidence and raise issues tried by the express or implied consent of the parties, *Peed v. Peed*, 72 N.C. App. 549, 325 S.E. 2d 275, *cert. denied*, 313 N.C. 604, 330 S.E. 2d 612 (1985), the trial court's ruling upon such a motion is not reviewable absent an abuse of discretion. *Tyson v. Ciba-Geigy Corp.*, 82 N.C. App. 626, 347 S.E. 2d 473 (1986).

In the present case, plaintiff's motion to amend came at the close of all of the evidence. During the course of the trial, plaintiff's counsel had expressly stated to the court that plaintiff was not seeking treble damages. Thus, even though plaintiff subse-

quently developed evidence which could arguably support a claim under Chapter 75 of the General Statutes, it does not appear that the issue was tried with the implied consent of the parties. Plaintiff has shown no abuse of discretion. We hasten to add, however, that our holding does not preclude plaintiff from moving to amend its pleadings upon remand and prior to a new trial. In the event of such an amendment, there could be no confusion concerning the issues before the court at retrial.

For the reasons stated, we remand this case to the Superior Court of Guilford County for a new trial.

New trial.

Judges WELLS and EAGLES concur.