SOUTHERN BUILDING MAINTENANCE, INC., PLAINTIFF V.
GREGORY CARL OSBORNE, DEFENDANT

No. COA96-993

(Filed 2 September 1997)

1. **Labor and Employment § 89 (NCI4th)— covenant not to compete—settlement agreement—damages for breach**

    The evidence supported the trial court's finding that plaintiff janitorial service suffered damages (lost profits) in the amount of $3,750.00 as a direct and proximate result of defendant former manager's breach of a covenant not to compete and a settlement agreement with plaintiff in which defendant agreed not to solicit plaintiff's customers.

2. **Unfair Competition or Trade Practices § 49 (NCI4th)— covenant not to compete—violation of settlement agreement—unfair and deceptive practice—treble damages**

    Defendant former manager's violation of a settlement agreement with regard to breach of a covenant not to compete constituted an unfair and deceptive practice which entitled plaintiff janitorial service to treble damages (lost profits) under N.C.G.S. § 75-16 where defendant's actions in contacting several of plaintiff's current clients to solicit maintenance business away from plaintiff during negotiation of the settlement agreement and after its execution disclosed more than a simple breach of contract and showed an intentional deception by defendant in dealing with plaintiff.

**3. Unfair Competition or Trade Practices § 51 (NCI4th)—prevailing party—denial of attorney's fees—no misapprehension of authority—no abuse of discretion**

The trial court did not abuse its discretion in refusing to award attorney's fees to the prevailing plaintiff in an unfair and deceptive practice action arising from a violation of a covenant not to compete and a settlement agreement where adequate evidence supported the trial court's finding that there was no unwarranted refusal by defendant to fully resolve the matter, and the record is devoid of any evidence that the trial court labored under any misapprehension that it did not have authority to award plaintiff attorney's fees. N.C.G.S. § 75-16.1

Appeal by defendant from judgment entered 1 March 1996 and appeal by plaintiff from order entered 25 June 1996, by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 24 April 1997.

*Adams Kleemeier Hagan Hannah & Fouts, P.L.L.C., by J. Alexander S. Barrett and Benjamin A. Kahn, for plaintiff-appellee.*

*Gordon & Johnston, by Robert L. Johnston, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

This action arises out of the breach of a covenant not to compete provision contained in an employment contract executed in January 1989 between defendant Gregory Carl Osborne and plaintiff Southern Building Maintenance, Inc. Upon defendant's breach of the contract's covenant not to compete, the parties executed a settlement agreement on 17 March 1994. Defendant subsequently violated the 17 March 1994 settlement agreement and plaintiff instituted this action on 28 July 1994 in Guilford County Superior Court, seeking an injunction and damages against defendant.

On 29 July 1994, plaintiff filed a motion for preliminary injunction, seeking to enjoin defendant from further violation of the 17 March 1994 settlement agreement. Thereafter, on 14 September 1994, the parties entered into a consent order, which permanently enjoined further violation of the settlement agreement. This matter came on for hearing before Judge Catherine C. Eagles, during the 22 January

SOUTHERN BLDG. MAINTENANCE v. OSBORNE

[127 N.C. App. 327 (1997)]

1996 civil session of Guilford County Superior Court. The evidence presented was as follows.

Plaintiff corporation is in the business of providing commercial janitorial services. In January 1989, defendant was hired by plaintiff corporation as a manager with its Greensboro offices. Defendant was responsible for calling on customers and potential customers, submitting proposals or bids on potential jobs, staffing cleaning jobs, and handling any problems or complaints from customers. In the course of his employment, defendant became familiar with plaintiff's customers, pricing practices, costs, and charges for services rendered. At the time that defendant was hired, defendant signed an employment contract which contained a covenant not to compete with plaintiff.

On 15 January 1994, defendant was terminated from employment with plaintiff. As of that date, Soabar, Inc. and Rexham Corporation were plaintiff's customers. Prior to his termination, plaintiff through defendant, submitted a proposal to Soabar for janitorial services. This proposal had not been accepted nor rejected by Soabar as of the date of defendant's termination of employment.

Soon after defendant's termination from plaintiff corporation, defendant started his own cleaning business, 21st Century Building Services. Defendant's primary customers were residential and small commercial accounts. Defendant, however, was open to servicing plaintiff's "former" clients, once these clients terminated their relationship with plaintiff. Defendant testified that representatives of Soabar and Rexham had contacted him and indicated that they had terminated their contracts and/or decided not to contract with plaintiff corporation. As a result, defendant submitted proposals, and subsequently, began to perform janitorial services for both corporations.

When plaintiff learned of defendant's activities, plaintiff contacted defendant and demanded that he cease competition with plaintiff corporation, as required by the subject non-compete clause. Consequently, the parties, through counsel, negotiated a settlement agreement. This agreement allowed defendant to continue to perform work for plaintiff's former clients, Rexham and Soabar, but required defendant to compensate plaintiff for its lost profits due to his breach of the non-compete clause. The settlement agreement also allowed defendant to operate a cleaning service which performed residential and small commercial jobs, as well as other specifically listed types

of cleaning in which plaintiff corporation did not engage. The settlement agreement, however, provided that defendant would not do as follows:

> Call upon or cause to be called upon, solicit or assist in the solicitation of any person, firm, association, or corporation, that is a customer or account of the Company [(Southern)] or any subsidiary or affiliate thereof on the date of this Agreement.

The agreement further provided that he would not do the following:

> Own any interest in, manage, operate, control, be employed by, render advisory services to, or participate in the operation, management or control of any business that provides commercial cleaning, maintenance and other janitorial services in competition with the Company [(Southern)] . . . within [a specified geographical area, including Guilford County].

Finally, the settlement agreement provided that the covenants not to compete therein would expire on 14 November 1994.

Despite the provisions of the settlement agreement, defendant contacted some of plaintiff's customers during the agreement's negotiations, including Ecoflo. Particularly, in a letter to Ecoflo, mailed on 22 February 1994, plaintiff indicated:

> I will soon enter into an agreement with Southern Building Maintenance Company that will prevent me from initiating any contact with you relative to commercial janitorial service until November 14, 1994.
>
> . . .
>
> During the term of the impending agreement, I will not initiate contact with you for commercial janitorial services. However, if in the course of your business relationship with my previous employer you should independently choose to terminate that relationship, I would covet the opportunity to submit a professional and competitive proposal for fulfilling your custodial needs. In fact, we have the staff and equipment in stock to start most accounts on 24-hour notice.

Plaintiff and defendant signed the settlement agreement on 17 March 1994. Defendant contacted Ecoflo at least once after the execution of the settlement agreement, emphasizing the fact that he could not work for Ecoflo unless the company terminated its contract with plaintiff corporation and referring to the 22 February 1994 letter pre-

viously mailed to Ecoflo. Thereafter, on 19 April 1994, Ecoflo informed plaintiff that it was terminating plaintiff corporation's janitorial services effective 18 May 1994. Notably, prior to this date, defendant had provided Ecoflo with a verbal proposal for his janitorial services. Subsequently, Ecoflo terminated it's contract with plaintiff for janitorial services on 5 May 1994 and immediately retained the services of defendant's company.

After hearing all of the evidence and arguments of counsel, Judge Eagles entered judgment on 1 March 1996, finding defendant liable to plaintiff for damages in the amount of $3,750.00, and trebling those damages pursuant to section 75-16 of the North Carolina General Statutes. In the judgment, Judge Eagles also held that plaintiff was entitled to "reasonable expenses, including attorney's fees, in an amount to be set by further Order of this [c]ourt[,]" after the submission of affidavits by the parties in support of or in opposition to an award of such expenses. On 7 March 1996, defendant filed an objection to the trial court's award of attorney's fees; and after a hearing on the objection, the trial court entered an order denying plaintiff attorney's fees. Defendant appeals from the 1 March 1996 judgment awarding plaintiff treble damages for his breach of contract; and plaintiff appeals the 25 June 1996 order denying plaintiff corporation attorney's fees. For the reasons discussed herein, we affirm both the 1 March 1996 judgment and the 25 June 1996 order of the trial court.

[1] Defendant first argues on appeal that the trial court erred in finding that plaintiff had suffered damages in the amount of $3,750.00 as a direct and proximate result of his breach of the 17 March 1994 settlement agreement. We cannot agree.

A trial judge, sitting without a jury, acts as fact finder and weigher of evidence. Accordingly, if his/her findings are supported by competent evidence, they are binding on appeal, although there may be evidence that may support findings to the contrary. *Taylor v. Volvo North American Corp.*, 339 N.C. 238, 247, 451 S.E.2d 618, 622 (1994).

The trial court's authority to award damages in a breach of contract action is well established. It is also well established that "[d]amages for breach of contract may include loss of prospective profits where the loss is the natural and proximate result of the breach." *Mosley & Mosley Builders v. Landin Ltd.*, 87 N.C. App. 438, 446, 361 S.E.2d 608, 613 (1987) (citing *Perkins v. Langdon*, 237 N.C. 159, 74 S.E.2d 634 (1953)), *cert. dismissed*, 322 N.C. 607, 370 S.E.2d

416 (1988), *quoted in McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 400, 407, 466 S.E.2d 324, 329 (1996). The party claiming these damages bears the burden of proving its losses with "reasonable certainty." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 546, 356 S.E.2d 578, 585, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987). That party must show "that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Id.* at 547-48, 356 S.E.2d at 586. While the reasonable certainty standard requires something more than "hypothetical or speculative forecasts," it does not require absolute certainty. *McNamara*, 121 N.C. App. at 407-08, 466 S.E.2d at 329 (citing *Mosley*, 87 N.C. App. at 446, 361 S.E.2d at 613); *Weyerhaeuser Co. v. Supply Co.*, 292 N.C. 557, 561, 234 S.E.2d 605, 607 (1977)).

In the instant action, the trial court had before it evidence which tended to show that in spite of and in derogation of the non-compete clause in his employment contract with plaintiff, defendant solicited the business of plaintiff's former clients. Upon this breach, a settlement agreement was subsequently executed wherein defendant was permitted to continue to provide services to plaintiff's former clients, but was required to pay plaintiff the lost profits resulting from his breach. Therein, defendant agreed that he would not contact or solicit the business of any other of plaintiff's clients. Ultimately, however, defendant breached the settlement agreement and contacted various clients serviced by plaintiff, including Ecoflo.

On 22 February 1994, during negotiations of the settlement agreement, defendant wrote a letter to a representative of Ecoflo, noting that he was negotiating an agreement that would preclude him from contacting Ecoflo about providing the company with commercial janitorial services. This letter also indicated his willingness and readiness to provide such service "if [Ecoflo] should independently choose to terminate [its] relationship [with plaintiff]." Thereafter, Ecoflo terminated its contract with plaintiff, and immediately hired defendant's company to provide commercial janitorial services to the company. While Ecoflo's representative testified that Ecoflo terminated its contract with plaintiff due to dissatisfaction with plaintiff's service, the record is rife with evidence that supports the trial court's finding that Ecoflo's action in terminating its contract with plaintiff was done "at least in part, [due to] the availability of services from [defendant's] company."

Further, there was evidence presented by plaintiff corporation which tended to show that prior to terminating its contract, plaintiff was charging Ecoflo for its services in the amount of $1,576.00 per month; and that after deductions for labor costs and other expenses, plaintiff realized a gross profit in the amount of $592.00 per month on this account—for a total loss in gross profits of $3,749.00 from the period of 4 May to 14 November 1994. Defendant argues, however, that these figures are incorrect as (1) the $1,576.00 monthly charge for plaintiff's janitorial services represents a "new price" that was never accepted by Ecoflo; and (2) the $592.00 per month and $3,749.00 total figures for loss of gross profit were incorrect as plaintiff failed to deduct any of its non-direct overhead costs from those figures. Defendant ignores the fact that plaintiff corporation's president, James Ray, testified that the corporation's profits would have "definitely and affirmatively . . . been $592 more than [they were]"; and that plaintiff corporation did not save any non-direct costs by the loss of the Ecoflo account.

Accordingly, we find that the trial court had before it adequate evidence showing that to a "reasonable certainty," plaintiff had suffered loss of profits in the amount of $3,750.00. As there was plenary evidence from which a fact finder could determine that as a direct and proximate result of defendant's breach of the 17 March 1994 settlement agreement, plaintiff suffered damages (a loss of profits) in the amount of $3,750.00, we find no error in the trial court's finding in this regard; and defendant's argument to the contrary must fail.

[2] Defendant next argues that the trial court erred in trebling plaintiff's damages under North Carolina General Statutes section 75-16. We do not agree.

Section 75-16 of the General Statutes provides a business injured by another person in violation of Chapter 75 with a right of action, and recovery of treble damages for such injury. N.C. Gen. Stat. § 75-16 (1994). In order to prevail in an action for unfair and deceptive trade practices under Chapter 75, the claimant must show that (1) the acts or practices in question are "in or affecting commerce"; (2) the acts or practices in question had the capacity or tendency to deceive or were unfair; and (3) the claimant suffered actual injury as a proximate result of the other party's acts or practices. *In re Kittrell,* 115 B.R. 873 (Bankr. M.D.N.C. 1990). Once the fact finder determines whether a party committed certain acts and whether those acts had a causal connection to the claimant's injury, the court as a matter of law may determine whether these acts do indeed constitute unfair

and deceptive practices in violation of Chapter 75. *La Notte, Inc. v. New Way Gourmet, Inc.*, 83 N.C. App. 480, 350 S.E.2d 889 (1986), *appeal dismissed and cert. denied*, 319 N.C. 459, 354 S.E.2d 888 (1987). A mere breach of contract does not constitute an unfair or deceptive trade practice. *Coble v. Richardson Corp.*, 71 N.C. App. 511, 322 S.E.2d 817 (1984). However, when a breaching party to a contract engages in a practice which "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers[,]" an action under Chapter 75 can be maintained. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981); *see also United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985 (4th Cir.), *cert. denied*, 454 U.S. 1054, 70 L. Ed. 2d 590 (1981). Similarly, a Chapter 75 action can be maintained where the breaching party to a contract "engages in conduct that amounts to an inequitable assertion of its power or position." *Libby Hill Seafood Restaurants, Inc. v. Owens*, 62 N.C. App. 695, 700, 303 S.E.2d 565, 569, *disc. review denied*, 309 N.C. 321, 307 S.E.2d 164 (1983). The record in the case *sub judice* discloses more than the simple breach of contract militated by defendant. Indeed, the facts show intentional deception in dealing with plaintiff. First, in spite of a covenant not to compete in his employment contract with plaintiff, defendant contacted several of plaintiff's "former" clients. Further, during negotiations of the 17 March 1994 settlement agreement, defendant, in direct contravention of its provisions, contacted several of plaintiff's current clients. Defendant emphasized his availability to provide janitorial services to these clients *if* they should terminate plaintiff's services. As former manager of plaintiff's Greensboro office, defendant had gained access to plaintiff's clients and developed credibility with those clients. Defendant took advantage of this position in competing with plaintiff. The trial court found, and we agree, that such actions have the requisite causal connection to plaintiff's lost profits and that these actions are unfair and deceptive trade practices within the meaning of Chapter 75. This argument, therefore, must fail.

[3] On appeal, plaintiff assigns as error the trial court's failure to award attorney's fees to plaintiff corporation pursuant to section 75-16.1 of the General Statutes. Specifically, plaintiff contends that the trial court labored under a mistaken impression that it did not have the authority to exercise its discretion to award attorney's fees to plaintiff in the instant action; and that the evidence did indeed support a finding that defendant unreasonably refused to resolve this matter. We cannot agree.

Section 16.1 of the General Statutes provides:

In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:

> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit[.]

N.C. Gen. Stat. § 75-16.1 (1994). An award or denial of attorney's fees under this section, even where supporting facts exist, is within the sound discretion of the trial court. *McDonald v. Scarboro*, 91 N.C. App. 13, 370 S.E.2d 680, *disc. review denied*, 323 N.C. 476, 373 S.E.2d 864 (1988).

In the case presently before us, the trial court, in its 1 March 1996 judgment, awarded plaintiff attorney's fees. However, upon objection of defendant, the trial court reconsidered this award. Consequently, the trial court entered an order denying plaintiff attorney's fees as "[t]here was no evidence presented that there was an unwarranted refusal by . . . defendant to fully resolve th[is] matter."

The record is devoid of any evidence that the trial court labored under any misapprehension that it did not have authority to award plaintiff attorney's fees as plaintiff contends. Indeed, the trial court, upon examining all of the evidence before it, decided that there was no evidence that defendant wilfully refused to fully resolve this matter; and as such, plaintiff was not entitled to attorney's fees. As there was adequate evidence to support the trial court's finding, that finding is binding upon this Court on appeal. Finding no abuse of discretion, the trial court's 25 June 1996 order denying plaintiff attorney's fees is affirmed.

In light of all of the foregoing, the 1 March 1996 judgment of the trial court is affirmed; and the 25 June 1996 order denying plaintiff attorney's fees is affirmed.

Affirmed.

Judges GREENE and WYNN concur.